WASSOM VS WILLISON ET AL.

Opinion delivered October 6, 1900.

1. *Indian Lands—Creek Leases—Exclusive as to Citizen's Farms With-in Boundaries Thereof.*

Plaintiffs held a lease, executed in accordance with laws of the Creek Nation, covering certain tracts of land as a "border pasture"; before its expiration the same was renewed for an additional term.    Before the expiration of the first lease, the defendant entered upon the leased tract, under a contract with a Creek citizen, for the purpose of taking up and occupying a portion of same as a farm of the Creek citizen.    Also before the expiration of the original lease, but after the entry of the defendant, the Creek Council passed an act (Laws Creek Nation, Ed. 1893, p. 120) making it unlawful for any citizen to make or improve farms within the limits of these "border pastures." *Held*, That even before the last cited act of the Creek Nation, under the authority of the law of that nation providing for the execution of leases of "border pastures," all of the unoccupied land embraced within the boundaries of the original lease were excluded from settlement by Creek Indians during the term of the lease; and it is immaterial whether the second lease is considered a new lease or a renewal of the first.

2. *Unlawful Detainer—Validity of Creek Leases—Evidence of Consent of Occupants.*

In an action of unlawful detainer, plaintiff claimed under a lease made in accordance with the laws of the Creek Nation (Laws Creek Nation, Ed. 1893, p. 120) which provides: "Any citizen or company of citizens of this nation shall have the right to build pastures larger than one mile square along the border of this nation, by securing the consent of all the citizens who may be residing within such proposed enclosure, or who may be residing within one-half mile outside and from such enclosure." Defendant claimed to have been residing within the limits of this leased tract when same was made, but the testimony is silent as to whether or not his consent had been given.

*Held*, That as the lease was executed by proper authorities, lessees had taken possession thereunder before defendant attempted to assert any adverse rights, and the lease itself recited that the statute had been complied with, there was a prima facie case made by plaintiffs by the introduction of the lease in this form; and the burden of proof shifted to defendant to affirmatively show that his consent had not been given. And by his failure in this the case of plaintiff, already made out, was not disturbed.

Appeal from the United States Court for the Northern District.

W. M. SPRINGER, Judge.

Action by Mary A. Willison (administratrix of the estate of J. D. Willison), E. E. Weldon, and others, against Jacob L. Wassom, for damages for the detention of land claimed by plaintiffs under a lease from the Creek Indian Nation. Judgment directing a verdict for plaintiffs. Defendant appeals. Affirmed.

On or about April 1, 1890, the appellees E. E. Weldon and J. D. Willison, the intestate of appellee Mary A. Willison, administratrix, obtained from the Creek Nation, under the firm name of Willison & Weldon Pasture Company, a lease upon certain pasture lands lying in said nation, about six miles long from north to south, and about two miles wide. This lease was executed under the provisions of an act of the Creek council approved October 6, 1889, and was for the term of three years, ending April 1, 1893. In the spring of 1892 one Thomas Williams, a citizen of the Creek Nation by blood, entered into an agreement with appellant, Wassom (defendant below), to have him (the defendant) take up for Williams a farm of "600 or 700 acres, more or less," which was within the limits of and to be segregated from the land lying within the boundaries of the pasture above described.

The defendant immediately entered and began work upon the same under the said agreement. This agreement was reduced to writing on September 16, 1892. The defendant has continued to occupy and improve said premises since said time under said contract. On January 20, 1893, the chief of the Creek Nation entered into a contract with the firm of Willison & Weldon, under the provisions of section 341 of the Laws of the Creek Nation (Ed. 1893), which contract purported to be a renewal of the former lease for a term of six years, but which included, in addition to the land embraced in the former lease, another large tract of land lying contiguous to it. This suit was filed several years before it was tried, and before trial the lease of the appellees, the firm of Willison & Weldon, had expired, and hence the only recovery sought was damages for the detention of the land. The court at the close of the testimony instructed the jury to return a verdict for the plaintiffs (appellees here), and the jury found the damages to be $1,250. Exceptions were duly saved. The defendant also asked for a peremptory instruction to the jury for a verdict for him. This was overruled, and exception saved, and an appeal to this court was prayed for and granted.

*G. P. M. Turner, Rudolph Howerton,* and *Seaver & Gibson,* for appellant.

*W. T. Hutchings,* for appellees.

CLAYTON, C. J. The appellant's assignment of errors is as follows: (1) The court erred in giving the instruction asked by appellees, to return a verdict for the appellees; (2) the court erred in refusing to give the instruction asked by appellant, to return a verdict for appellant; (3) the court erred in refusing the instruction asked by appellant; (4) the court erred in overruling appellant's motion for a new trial;

(5) the court erred in entering judgment for the appellees. The appellant, in his brief, propounds two, and but two, questions for the consideration of this court.   They are: First, did the original lease held by plaintiffs cover all of the land within its exterior boundaries, so as to prevent a citizen of the Creek Nation from making a farm within said boundaries?   And, second, was the contract of January, 1893, a renewal of the former lease, or was it a new contract which was taken by plaintiffs, subject to all of the rights which the defendant had acquired before that time under his contract for improvement which he had entered into with Thomas Williams, his grantor, in 1892?

It is conceded that the leases executed by the officers of the Creek Nation were in compliance with the laws of that nation.   The lease to plaintiffs of April 1, 1890, does not appear in the transcript,   It appears, however, to have been offered in evidence, and that the land in controversy was a part of that covered by the instrument.   On November 3, 1892, the Creek Nation, by its counsel, passed an act making it unlawful for any citizen to make or improve farms within the limits of these "border pastures," as they were called. Laws Creek Nation (Ed. 1893) p. 120, § 350.   In the spring of 1892, and before the passage of this act, the defendant entered upon the land covered by the lease aforesaid, under a contract with a Creek citizen.   It is contended that, as there was no statutory law preventing Creek citizens from entering upon these leased premises at the time of the execution of the lease and of the entry upon the land by defendant, he could legally do so.   But, as far as the rights of the parties in a civil action are concerned, there was a law forbidding it. It was the act of the Creek council authorizing these leases to be made.   A lease under this act conveyed a leasehold title, which all Creek citizens, and those holding under them, were bound to respect.   It is true that it did not make it a misdemeanor, punishable by fine or imprisonment, to enter

unlawfully upon them, but it gave to the holders of these leases a right which they could maintain or defend in the courts. The statute would be nugatory, and the lease worthless, if this were not true. There can be no question but that all of the unoccupied land embraced within the boundaries of the lease of 1890 was excluded from settlement by Creek Indians during the term of the lease, and therefore the first proposition presented must be decided against the appellant.

Creek leases exclude farm settlements.

As to the second proposition: The first lease was executed on April 1, 1890, for a term of three years, and expired April 1, 1893. The so-called renewal lease was executed on January 20, 1893,—2 years, 9 months, and 19 days after the execution of the first, and 2 months and 12 days before its term expired; and therefore there was no space of time between the termination of the first and commencement of the second when rights of third parties could spring into existence. Under the first lease the defendant was a trespasser. Under the second he continued to be a trespasser, because there was no time when the plaintiffs were out of possession or without title. And therefore it is immaterial whether the last lease is to be considered a new one or a renewal of the the old one. The effect in either case is the same. The defendant can obtain no legal rights as against the new lease, if it be a new one, by virtue of his having been a trespasser under the old one. And therefore we are not called upon to decide the question as to whether or not the lease of 1893 was a renewal of that of 1890, or a new and original one, because, as above shown, in either event the defendant could obtain no rights under his contract executed in the spring of 1892, at a time when the old lease was alive and in force. But the defendant contends that a pasture lease, to be valid under the Creek laws, must have been procured with the consent of all the citizens who were residing within the pro-

(25)

posed inclosure, or who were residing within one-half mile outside of and from the inclosure, and as it was in proof that Thomas Williams, at the time of the execution of the lease, was living within the limits of the leased land, and there was no proof of his having given his consent, that the lease of 1893 was void.   The Creek statute is as follows:   "Any citizen or company of citizens of this nation shall have the right to build pastures larger than one mile square along the border of this nation, by securing the consent of all the citizens who may be residing within such proposed inclosure, or who may be residing within one-half mile outside and from such enclosure: provided that such pastures to be hereafter built shall not be of greater width from the border than ten miles."   Laws Creek Nation (Ed. 1893) p. 118.   Let it be conceded in this case that this statute requires, as a condition precedent to the validity of the lease, as affecting the rights of the class of persons mentioned by the act, that this consent to the execution of the lease must first be had, and, if not had, the persons refusing or failing to consent may, under the general laws of the nation, treat it as a part of the public domain, and build farms, graze their cattle, or do any other lawful thing upon it.   Yet, as this lease had been executed by the proper authorities of the nation, and the lessee had taken possession long before the defendant's grantee had attempted to assert the rights which he claims, and the deed of lease itself recites that the plaintiffs had complied with the statute in the application and plat which he filed, and both were approved and accepted, there is no doubt but that under these circumstances a deed of lease, thus executed, when offered in evidence by the plaintiffs, which was done in this case, made prima facie proof of the performance of all the conditions precedent necessary to give it validity in law, and shifted from the plaintiffs the burden of proof, and required the defendant to show that his consent had not been given.   At the trial the defendant put Williams, his grantor, on the stand, who testified that he

had lived in the town of Wagoner from 1889 to 1894, and that that town was within the limits of the leased premises; but he did not state, nor was he asked the question, as to whether or not he had given his consent to the execution of the lease. Both he and defendant's counsel were silent on this subject, and no witness testified that his consent was not given. As the defendant's grantor was alive and was used by him as a witness in the case, he had ample opportunity to make his proof. He failed to do so, probably because consent had been given; but, whether it had or not, the prima facie case made by the deed and its recitals had not been attacked or overthrown; but, on the contrary, the very silence of the witness, and the failure of defendant's counsel to put to him the question on what now appears to him to be so important a point of his case, but strengthened and corroborated the prima facie case already made by the plaintiffs, and therefore the conditions of the lease, which defendant's counsel insist are necessary to its validity, are shown by the legal proof to have been performed. We therefore hold that the court did not err in giving to the jury a peremptory instruction in favor of the plaintiffs, nor in refusing to give such a one in favor of the defendant. The judgment of the court below is affirmed.

THOMAS, TOWNSEND, and GILL, JJ., concur.